## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

SHIRLEY CRUSE, VIVIAN JEANETTE HUNTER,
NORA GARCIA, FONDA OSBORN, NANCY
PEREZ-FUGERE, LILLIE SANDOVAL, CHIP
UPSAL, and GAIL WILLIAMS, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.                                                   No. 10-CV-394 WJ/RLP

ST. VINCENT HOSPITAL d/b/a CHRISTUS ST.
VINCENT REGIONAL MEDICAL CENTER, a New
Mexico Non-Profit Corporation,

      Defendant.


## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

THIS MATTER comes before the Court on Plaintiffs' Motion to Remand (Doc. 10).

Plaintiffs filed this collective action against Defendant in New Mexico state court alleging that

Defendant violated provisions of the New Mexico Minimum Wage Act, N.M. Stat. § 50-4-1

(1978), as well as state common law by refusing to pay Plaintiffs for time worked during the

lunch period.  Defendant removed this case on the theory that all of Plaintiffs' claims are

preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Plaintiffs now

ask this Court to remand the case because their claims are controlled solely by state law, not

federal law.  Because Plaintiffs' state claims are independent of their collective bargaining

agreements with the Defendant, their claims are not preempted by § 301 of the Labor

Management Relations Act.  Accordingly, the Plaintiffs' complaint presents no basis for federal

jurisdiction and this Court GRANTS Plaintiffs' Motion to Remand.

## BACKGROUND

All the Plaintiffs are current or former employees of Defendant St. Vincent Hospital ("Hospital").  Plaintiffs allege in their Complaint that the Hospital has a long-standing policy of providing its employees with an unpaid thirty-minute lunch break.  However, "[a]s a consequence of the Hospital's deliberate staffing patterns, employees are rarely able to actually take a thirty-minute lunch break and are generally required to work through lunch."  Complaint, at 2.  Specifically, Plaintiffs allege that Hospital policy (as well as Plaintiffs' professional responsibility requirements) allow them to take a lunch break only if the Hospital provides a relief employee to assume their duties.  According to Plaintiffs, the Hospital "rarely schedules or provides relief employees to assume the identified obligations."  *Id.*  Despite the fact that the Plaintiffs cannot take their lunch break, the Hospital routinely deducts thirty minutes from each employee's time worked for the day.  In addition, Hospital employees "are discouraged from seeking pay for work performed during their unpaid lunch breaks."  *Id.*  "As a result, the [Hospital] has knowingly received the benefit of tens of thousands of hours of work, for which it has not compensated its employees."  *Id.*  Much of this uncompensated work, according to the Complaint, is performed at overtime rates.  *Id.*

While not contained in the Complaint, the following additional facts are included in the Defendant's Response, are undisputed by the Plaintiffs, and are essential to understanding the instant Motion.  All of the named Plaintiffs are represented by the National Union of Hospital and Healthcare Employees AFSCME, AFL-CIO, District 1199NM ("the Union").  As members of the Union, all the named Plaintiffs are covered by either the Nurse Collective Bargaining Agreement or the Technical Collective Bargaining Agreement (collectively, "the Agreements").

These Agreements were negotiated between the Hospital and the Union.  Both Agreements give covered employees (which include the named Plaintiffs) the right to have and to take an unpaid thirty-minute lunch period.  The Agreements also permit the Hospital to automatically deduct thirty-minutes from each employee's time worked for the day, rather than requiring each employee to clock in and clock out for his designated lunch period.  If an employee must work during his lunch period, the Agreements allow that employee, with the approval of his supervisor, to log "no lunch" and consequently receive payment for those thirty minutes.  The Agreements also grant employees daily overtime for hours worked in excess of a regular eight-hour shift.  Finally, the Agreements require the Hospital and the Union to negotiate and agree on a workable staffing system.

## MOTION TO REMAND

A district court must remand a case to state court whenever the district court lacks subject matter jurisdiction over the case.  28 U.S.C. § 1447(c) (2000).  Absent diversity of citizenship, a district court has jurisdiction over cases in which "a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Generally, if the federal question does not appear on the face of the plaintiff's complaint, there is no federal question jurisdiction.  However, if the state claim is completely preempted by federal law, that claim is considered a federal claim arising under federal law.  *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 n.4 (10th Cir. 2006).  *See also David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1137 (10th Cir. 2005) (noting that when complete preemption exists, the state claim becomes a federal claim and serves as a basis for removal jurisdiction); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (noting that federal courts may exercise jurisdiction over complaints that present state law claims preempted

by federal law).  The doctrine of complete preemption has been repeatedly applied to state law

claims which are preempted by § 301 of the Labor Management Relations Act.  *See Felix v.*

*Lucent Technologies, Inc.*, 387 F.3d 1146, 1154-55 (10th Cir. 2004) ("[T]he preemptive force of

§ 301 is so powerful as to displace entirely any state cause of action for violation of contracts

between an employer and a labor organization.") (quoting *Franchise Tax Bd. v. Constr. Laborers*

*Vacation Trust*, 463 U.S. 1, 23-24 (1983)).

## ANALYSIS

§ 301 Preemption.  The Hospital argues that Plaintiffs state-law claims are preempted by

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which controls disputes

over collective bargaining agreements.  That section states, in relevant part: "Suit for violation of

contracts between an employer and a labor organization representing employees in an industry

affecting commerce . . . may be brought in any district court of the United States having

jurisdiction of the parties."  The Supreme Court has held that Section 301 not only confers

federal jurisdiction over collective bargaining disputes, but also reflects Congress' desire to have

a uniform federal interpretation of collective bargaining agreements.  Accordingly, all suits

which fall under § 301 must be governed by federal law.  *Textile Workers Union v. Lincoln*

*Mills*, 353 U.S. 448, 456 (1957) ("We conclude that the substantive law to apply in suits under §

301(a) is federal law, which the courts must fashion from the policy of our national labor

laws."); *Teamsters v. Lucas Flour*, 369 U.S. 95, 103 (1962) ("The dimensions of § 301 require

the conclusion that substantive principles of federal labor law must be paramount in the area

covered by the statute.").  While state courts have concurrent jurisdiction over § 301 cases, they

must apply federal law rather than state law to those disputes.  Because federal law exclusively

controls in this area, any state law causes of action—whether they sound in tort or

4

contract—which depend on the meaning of a collective bargaining agreement are preempted.

*United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990).  "State law is thus preempted by §

301 in that only the federal law fashioned by the courts under § 301 governs the interpretation

and application of collective bargaining agreements."  *Id.* at 368.

The question here, then, is whether Plaintiffs' claims properly fall under § 301 or state

law.  After all, "not every dispute . . . tangentially involving a provision of a collective

bargaining agreement is pre-empted by § 301."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202,

211 (1985).  Rather, state law claims are only preempted if they are not "sufficiently

independent" of the collective bargaining agreement.  *United Steelworkers*, 495 U.S. at 369.  The

Supreme Court has stated the relevant inquiry in various ways.  "[I]f the resolution of a state-law

claim *depends upon* the meaning of a collective-bargaining agreement, the application of state

law . . . is pre-empted."  *Lingle v. Norge*, 486 U.S. 399, 405-06 (1988) (emphasis added).  Put

another way, section 301 does not preempt "state rules that proscribe conduct, or establish rights

and obligations, *independent* of a labor contract."  *Allis-Chalmers Corp.*, 471 U.S. at 212

(emphasis added).  Citing Supreme Court precedent, the Tenth Circuit has held that a state law

claim is preempted by § 301 whenever evaluation of the claim is "inextricably intertwined with

consideration of the terms of the labor contract."  *Garley v. Sandia Corp.*, 236 F.3d 1200, 1208

(10th Cir. 2001).

Plaintiffs here have sued the Hospital for violation of the New Mexico Minimum Wage

Act as well as for unjust enrichment.  In order to determine whether these claims are preempted

by § 301, this Court must analyze the elements of each of Plaintiffs' claims and determine

whether or not resolution of these claims depends upon an analysis of the collective bargaining

agreements.  In analyzing these claims, the Court may not consider any defenses that the

5

Hospital may raise.  *Caterpillar*, 482 U.S. at 398-99 ("It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives.  But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule . . . .")

Minium Wage Act.  In relevant part, the Minimum Wage Act states that every employer shall pay its employees a minimum wage of $7.50 per hour.  N.M. Stat. Ann. § 50-4-22(A).  In addition, the Act states that "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."  *Id.* § 50-4-22(D).  In order to prevail on this claim, Plaintiffs must show that "(a) they worked more than forty hours a week, (b) that [the Hospital] knew or should have known that they did so, and (c) that they were not compensated for the overtime."  *Self v. United Parcel Service, Inc.*, 970 P.2d 582, 589 (N.M. 1998).  In their Complaint, Plaintiffs allege that the Hospital violated the Act by requiring its employees to work over the lunch period while failing to pay them wages for that thirty minute period.  Plaintiffs also allege that much of this additional work was performed at overtime rates.

While it is a close call, this Court believes that Plaintiffs' Minimum Wage Act claim does not require the Court to analyze the provisions of the collective bargaining agreements. The New Mexico Minimum Wage Act sets forth minimum standards for all employees; the rights it guarantees do not depend on the employee's relationship with a union or on any contract the employee may have with his employer.  *Self*, 970 P.3d at 588.  While a collective bargaining agreement may implement or supplement the guarantees of the Minimum Wage Act, it may not substitute those guarantees for ones of its own.  Here, Plaintiffs need only show that inadequate

Hospital staffing procedures caused them to work through lunch, that the Hospital knew (or should have known) that Plaintiffs worked through lunch, and that the Hospital failed to pay Plaintiffs for that time.  It is only tangentially relevant to this claim that Plaintiffs had the ability to clock "no lunch" under the terms of the Agreements—especially in light of Plaintiffs' allegation that the Hospital actively discouraged its employees from seeking pay for this thirty-minute period.  The Plaintiffs' ability to clock "no lunch" may be relevant to the Hospital's defense, but Plaintiffs need not prove—or even refer to—that fact in order to prevail on their claim.  While information regarding the terms and existence of the Agreements may be relevant background information, none of that information is essential to Plaintiffs' claim.[1]

Defendant cites to a number of cases in which § 301 preempted the plaintiff's state law claims, but each of the cited cases is distinguishable.  In *Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003), an employee of Defendant Saks & Company sued his employer under New York state law for making allegedly impermissible deductions from wages.  New York law prohibited employers from making any deductions from the wages of their employees except those specified by law.  *Id.* at 112.  However, the collective bargaining agreement between Defendant Saks and its employees permitted Saks to charge all unidentified returns back against the commissions of its employees on a prorated basis.  Defendant Saks removed the case to federal court, arguing that § 301 preempted the plaintiff's claims.  The Second Circuit agreed.  Chief

---

[1] In addition, the fact that information about the agreed-upon overtime rates contained in the collective bargaining agreements may be relevant to any determination of damages does not preempt Plaintiffs' claim under the Act.  "[W]hen liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301."  *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994).

among the Second Circuit's reasons was the fact that "plaintiff's complaint challenge[d] the legality of a term of the CBA, namely, the unidentified returns provision." *Id.* at 116-17.  The Court held that anytime a plaintiff challenged the legality of a specific provision of a collective bargaining agreement, the Court would necessarily have to engage in an analysis of the agreement itself.  *Id.* at 117.  Because plaintiff's claim clearly required the Court to construe the collective bargaining agreement, it was preempted by § 301.  *Id.*  Here, on the other hand, Plaintiffs have not objected to any term or provision in the collective bargaining agreements.  Rather, Plaintiffs only complain that Defendant required them to work during their lunch period and failed to pay them for the time worked.  Nowhere in Plaintiffs' complaint do they mention the collective bargaining agreements, let alone object to a specific provision in those agreements.

Defendant also cites to *Firestone v. S. Cal Gas*, 219 F.3d 1063 (9th Cir. 2000), in which meter readers sued their employer gas company for overtime pay.  California law stated that employees must receive overtime pay at one-and-a-half times their regular wage for all hours worked over forty in a given week.  *Id.* at 1066.  However, California exempted employees covered by a collective bargaining agreement so long as that agreement provided "premium wage rates for overtime work."  *Id.*  The Ninth Circuit held that § 301 preempted plaintiffs' claims because the Court had to interpret the underlying collective bargaining agreement in order to determine whether plaintiffs were, in fact, receiving premium overtime wages.  *Id.* Furthermore, the parties disagreed over the correct interpretation of various provisions in the agreement which set forth employee wage rates.  *Id.*  Because the Court had to construe the terms in the collective bargaining agreement in order to determine whether plaintiffs received premium overtime wages, plaintiffs' claims were preempted by § 301.  In the case at hand, however, the Court need not interpret any provisions of the collective bargaining agreements in

8

order to resolve the question presented.

While the cases raised by Defendant are distinguishable, Plaintiffs cite to a New Mexico case which is almost precisely on point.  In *Self v. United Parcel Service*, 970 P.2d 582 (N.M. 1998), a group of package delivery drivers sued UPS in state court for violations of the New Mexico Minimum Wage Act.  Specifically, the plaintiffs "complained that UPS automatically deducted a one-hour meal period from their hours worked despite the Company's actual and constructive knowledge that drivers regularly work through that period."  *Id.* at 584-85.  UPS removed the case to federal court, arguing that plaintiffs' claims were preempted by § 301.  The federal district court disagreed and remanded the case.  In state court, UPS argued a second time that the claims were preempted.  The New Mexico Supreme Court rejected UPS' argument.  It noted that the New Mexico Minimum Wage Act "does not pose any questions of law that require interpretation of the collective-bargaining agreement."  *Id.* at 588.  It also found that plaintiffs' claims raised questions of fact which were only "tangentially related" to the collective bargaining agreement.  *Id.* at 589.  For example, Plaintiffs alleged that management knew the drivers had to work unrecorded hours in order to meet job productivity standards.  They also alleged that UPS had an "actual productivity or quota system for encouraging (if not requiring) such off-the-clock work."  *Id.*  The Court held that these factual allegations could be shown without reference to the collective bargaining agreement.  Even if the collective bargaining agreement set forth such a quota system, the plaintiffs only needed to show that such a quota system in fact operated—not that such a system was reflected in the agreement.  *Id.*

Defendant urges this Court to disregard the analysis in *Self* because "the defendant employer made little or no showing of any fact that would require interpretation of a collective bargaining agreement."  Defendant's Response, at 12.  This Court disagrees.  Defendant UPS

9

clearly argued that the New Mexico court could not resolve the Minimum Wage Act question without interpreting the collective bargaining agreement. *Self*, 970 P.2d at 588 ("The Company argues that Plaintiffs' claims raise questions of fact that require interpretation of the agreement, and thus their claims are preempted by Section 301.")  While the opinion does not recite the specific provisions in the agreement relied upon by UPS, this Court can still draw guidance from the New Mexico Supreme Court's analysis.

Finally, while the Court is confident that a resolution of Plaintiffs claims do not depend on any provision of the Agreements, the Court notes that Plaintiffs *could have* sued under the terms of their Agreements.  Those Agreements specified that Plaintiffs would receive a thirty-minute lunch break, and also specified that Plaintiffs could clock "no lunch" and receive payment for those thirty minutes whenever they were required to work through lunch. Presumably, Plaintiffs could have sued Defendant for violating the terms of their Agreements by discouraging them from taking lunch and simultaneously discouraging them from receiving pay. However, in this case, the Minimum Wage Act and § 301 present alternative, parallel tracks on which Plaintiffs can sue.  Plaintiffs are not prevented from suing under the Minimum Wage Act merely because suit is also available under § 301.  So long as Plaintiffs' Minimum Wage Act claim is sufficiently independent of—and does not rely on—the collective bargaining agreements, then Plaintiffs are free to sue under the Act.  Accordingly, § 301 does not preempt Plaintiffs claim under the New Mexico Minimum Wage Act.

<u>Unjust Enrichment</u>.  Similarly, Plaintiffs make a claim of unjust enrichment based on their allegations that the Hospital benefitted from Plaintiffs' labor while failing to pay them for all hours worked.  In order to prevail on their claim of unjust enrichment under New Mexico law, Plaintiffs must show that (1) the Hospital knowingly benefitted at the Plaintiffs' expense,

10

and (2) that allowing the Hospital to retain the benefit would be unjust.  *Credit Institute v. Veterinary Nutrition Corp.*, 62 P.3d 339, 344 (N.M. Ct. App. 2002) (quoting *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000)).  Again, Plaintiffs need not refer to or rely on any provision in the Agreements to prevail on their unjust enrichment claim.  Certainly, the Hospital may raise various provisions in the collective bargaining agreements to show that allowing the Hospital to retain the benefit is not unjust.  However, in answering the preemption question, this Court is limited to analyzing the claims raised in Plaintiffs' Complaint without regard to any defenses raised.  *See Caterpillar*, 482 U.S. at 389-99.

## CONCLUSION

Because Plaintiffs' state law claims do not depend upon any provision of the collective bargaining agreements, those claims are not preempted by § 301 of the Labor Management Relations Act.  Accordingly, this Court GRANTS Plaintiffs' Motion to Remand.  All other pending Motions are DENIED AS MOOT.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE